**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KAREN R. RATTAN**, <br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL**, <br> Acting Commissioner of <br> Social Security, <br><br> Defendant. | Case No. 4:16-cv-04779-YGR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> **DKT. NOS.:** 18, 21 |

Claimant Karen Reshma Rattan filed this action against defendant Nancy Berryhill as Acting Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's finding that she was not disabled under section 1614(a)(3)(A) of the Social Security Act ("SSA"). Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 18, 21.) Claimant argues that the Administrative Law Judge ("ALJ") erred by improperly discounting her treating physician's medical opinions that she needs to (1) elevate her legs for two hours in an eight-hour workday, and (2) use a cane to ambulate. Based thereon, claimant seeks reversal with a finding of disability and an award of benefits, or in the alternative, a rehearing.

Having carefully considered the papers submitted and the record in this case, and for reasons set forth below, the Commissioner's motion is **GRANTED**, and claimant's motion is **DENIED**.

I.  **BACKGROUND**

On November 27, 2012 claimant applied for Supplemental Security Income disability benefits, alleging that she became disabled on January 15, 2012. Claimant based her disability claim primarily on a history of severe musculoskeletal pain in her knees. (AR 53.) The claim was filed under Title XVI of the Social Security Act. (AR 129.) The claim was denied on May 23, 2013, and denied again after reconsideration on December 30, 2013. (AR 12.) Claimant appeared and testified at a hearing before an ALJ on February 4, 2015. On March 6, 2015, the ALJ issued his decision finding that the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act. (AR 20.) Claimant appealed the ALJ's decision to the Appeals Council, which denied her request for review, rendering the ALJ's decision final.

II. **LEGAL FRAMEWORK**

A. GENERAL STANDARDS

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679.

The Act uses a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantial work activity if her work involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is

not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the RFC to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. § 404.1520(g). "Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis

3

or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 16.972(a). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work and fulfills the duration requirement, she is disabled.

In any action brought by or against the United States, the Equal Access to Justice Act requires that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### B. MEDICAL OPINIONS

Relevant to the instant motions, medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the opinions of treating physicians generally accorded the most weight. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that three types of medical opinions exist in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than opinions of examining physicians). The rationale for giving greater weight to a treating physician's opinion is that he or she is "employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987). However, an examining physician's medical opinion may constitute substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.")

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). However, an "ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes*, 881 F.2d at 751. To reject a treating doctor's opinion, that is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks omitted). An ALJ can satisfy this requirement by "setting out a detailed

4

and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 633).

### III. THE ALJ'S DECISION

In a nine-page decision, the ALJ applied the five-step sequential analysis described above to determine claimant was not eligible for disability insurance benefits. A summary of his decision follows below.

#### A. STEP ONE

At Step One, the ALJ found that the claimant has not engaged in substantial gainful activity since November 27, 2012. (AR 14.)

#### B. STEP TWO

At Step Two, the ALJ determined that the claimant has severe impairments under 20 C.F.R. section 416.920(c), namely: osteoarthritis of the bilateral knees, status-post right arthroscopy (synovectomy/chondroplasty), and thoracic spine abnormality. (*Id.*)

#### C. STEP THREE

At Step Three, the ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment under 20 C.F.R. section 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). (*Id.*) In making his conclusion, the ALJ stated that claimant's severe impairments "do not cause a complete inability to ambulate despite the claimant's exaggerated physical presentation." (*Id.* at 15.) The ALJ cites as evidence that treating physician Victoria Barber, M.D. reported in 2012 that claimant had "an excellent response to [platelet rich plasma] for her right knee," that claimant "is not currently a candidate for total left knee replacement," that "there is no evidence of significant mid back impairment" or "of the kind of nerve root compromise or stenosis required under listing

1.04." (*Id.*)  The ALJ also notes, referring to claimant's back pain, that "[t]here are no MRI results indicating significant disc pathology," and that the claimant did not testify to any ongoing complaints at the hearing. (*Id.*)

### D. RFC DETERMINATION

Before reaching Step Four, the ALJ found that the claimant has the RFC to perform sedentary work as defined in 20 C.F.R section 416.967(a), with additional limitations: claimant can lift or carry no more than 10 pounds, can sit for 6-hours and stand for 2-hours in an 8-hour day. (*Id.*)  The ALJ also found that claimant's RFC includes mental work activity. (*Id.*)

In reaching his conclusions regarding claimant's RFC, the ALJ found that claimant's testimony about "the intensity, persistence, and limiting effects of her symptoms" were "not entirely credible." (*Id.* at 16.)  The ALJ points to surgical records and describes them as showing improvement of claimant's knee condition with only mild-to-moderate findings, with grade 2–3 chondromalacia, and with no evidence of defect after knee surgery. (*Id.*)  The ALJ describes claimant's MRI as showing intact meniscus and ligaments. (*Id.*)  The ALJ also notes that claimant's pain is related to physical therapy but is alleviated with rest. (*Id.*)  Additionally, the ALJ cites treating physician Dr. Barber's notes showing mild physical findings, no effusion, and ineligibility for knee surgery. (*Id.* at 17.)

The ALJ attributed "little weight" to claimant's treating physician's opinions regarding claimant's physical limitations.  The ALJ listed three reasons for discounting Dr. Barber's opinion: "[1] Dr. Barber's treatment notes do not support such extreme physical limitations; [2 Dr. Barber's treatment notes] do not comport with an earlier musculoskeletal questionnaire completed by Dr. Barber that indicates note [sic] of the physical limitations later noted and show a good range of active movement"; and "[3] claimant's own testimony concerning her functional capacity shows much fewer limitations and a greater capacity [than Dr. Barber's assertions]. (*Id.* at 16.)  Relevant to the instant motion, the ALJ specifically rejected Dr. Barber's opinions that claimant needed to elevate her legs for 25% of an 8-hour work day and that she needed a cane to ambulate. (*Id.* at 16–17.)

The ALJ relied instead on the conclusions of orthopedic Consulting Examiner, Terrance Flanagan, M.D. Dr. Flanagan reported that "claimant's right knee is secondary to chondromalacia patella as well as lateral meniscal tear, while the left knee pain is secondary to chondromalacia as well as degeneration of lateral meniscus, corroborated by MRI report provided for review today." (*Id.* at 343.) Based on these findings, Dr. Flanagan concluded that the claimant can lift twenty pounds occasionally and ten pounds frequently and that she can stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (*Id.*)

The ALJ found a more restrictive RFC than Dr. Flanagan, limiting claimant to lifting up to ten pounds at any time, sitting for six hours and standing and walking for two hours in an eight-hour day.

### E. STEP FOUR

At Step Four, the ALJ found that claimant is unable to perform past relevant work.

### F. STEP FIVE

At Step Five, the Vocational Expert ("VE") testified that given the claimant's limitations, as described by the ALJ, the claimant would be able to perform the full range of unskilled sedentary occupations and that there are thousands of jobs in this category. (*Id.* at 46.) The VE also testified that a need to elevate legs above the heart for two hours out of an eight-hour workday would render an individual unemployable. (*Id.* at 47.)

## IV. DISCUSSION

Claimant argues the ALJ erred when he failed to provide specific and legitimate reasons supported by substantial evidence that claimant needs to (a) elevate her legs for two hours in a workday, and (b) use a cane.

In opposition, the Commissioner argues that the ALJ properly evaluated claimant's treating physician's credibility and gave specific and legitimate reasons to afford the treating physician's opinion "little weight." The Commissioner maintains that the ALJ's determination was supported by substantial evidence and is free of reversible error. The Court considers the two issues addressed by the parties, in turn.

**A. DISCOUNTING OPINION OF DR. BARBER THAT CLAIMANT NEEDS TO ELEVATE LEGS**

Claimant argues that the ALJ did not reasonably evaluate the treating source's opinion. The Commissioner argues that the ALJ's rejection of the treating physician's opinions was proper because he articulated that Dr. Barber's opinions were inconsistent and unsupported by the record as a whole, and contradicted by Dr. Flanagan's medical opinion. The Court determines whether these findings constitute substantial evidence.

### 1. Inconsistencies in Dr. Barber's Medical Opinion

Internal inconsistencies in a doctor's opinion are a legitimate basis upon which an ALJ may properly discredit or discount the same. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (holding that ALJ sufficiently justified rejection of treating psychologist's testimony by identifying contradiction in her opinion, in that she "repeatedly reported [claimant] was unemployable while acknowledging he was continuing to work full-time"); *see also Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (stating that doctor's opinion may be rejected because it is self-contradictory and medical reports during relevant time period made "only limited references to medically observed limitations on functional capacity"). Additionally, Social Security regulations provide that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4)).

Claimant argues that the ALJ did not provide specific and legitimate reasons for discounting Dr. Barber's opinions. Claimant does not persuade. The ALJ provided a detailed analysis of the record, explaining what he found to be inconsistencies between the record and Dr. Barber's opinions regarding claimant's physical limitations. Specifically:

The ALJ found Dr. Barber's 2015 Medical Source Statement to be inconsistent with the Musculoskeletal Questionnaire she completed on March 15, 2013, and with her treatment notes from November 23, 2011 to December 10, 2014. Notably, the restriction that claimant must elevate her legs for two hours in an eight-hour work day appears only in the 2015 Medical Source Statement. The ALJ explained that "such extreme physical limitations [in the Medical Source Statement] . . . do not comport with an earlier musculoskeletal questionnaire completed by Dr. Barber that indicates note [sic] of the physical limitations later noted and show a good range of

8

active movement [AR 335.]" (AR 16.) The ALJ found that the findings reflected in such notes "were hardly the findings expected for the extreme limitations later noted by Dr. Barber [in the Medical Source Statement]." (AR 17.) For instance, in the 2013 Musculoskeletal Questionnaire, Dr. Barber indicated claimant had a good range of active movement, reflected no abnormal range of motion, instability in claimant's knees, or limitation affecting claimant's ability to lift or carry, and gave no indication that claimant had any sitting limitation or that she needed to elevate her legs. (AR 16, 334–37.) Despite such conclusions in 2013, the ALJ found that Dr. Barber failed to provide adequate reasons regarding claimant's physical limitations in 2015. (AR 16.) Rather, Dr. Barber stated in less than a sentence that claimant needs to elevate her legs for 25% of any given work day. (*Id.*); *see Matney v. Sullivan*, 981 F.2d 1016, 1019–20 (9th Cir. 1992) (holding that an "ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusory and brief and is unsupported by clinical findings").

Upon reviewing the record, the ALJ instead found that "there [was] no medical evidence to support such an extreme limitation" in the record, and, to the contrary, the record supported fewer limitations. (AR 19). For example, an MRI two months after her surgery to her right knee in March 2012 demonstrated only "mild tricompartmental osteoarthritis." (AR 301.) Furthermore, the treatment notes written closest in time to the 2015 Statement show no remarkable impairments that would support Dr. Barber's diagnoses contained therein. (AR 524–31.) As recently as May 2014, the treatment notes show sustained progress, described as: "improved pain," "range of motion intact," "no effusion," and "mild swelling." (AR 539–40.) Additionally, the claimant was also able to complete physical therapy exercises (AR 17–18; 339–45), which provides substantial evidence that her condition is not so severe as to require leg elevation for 25% of the work day at a sedentary job.[1]

---

[1] Additionally, as the Commissioner argues, Dr. Barber's recommended treatment for claimant involved only injections and physical therapy, and evidence in the record demonstrates that these methods had a positive effect. (AR 14–15, 19, 253.) Moreover, claimant was not a candidate for total knee replacement. (*Id.*) Conservative treatment such as this is indicative of a severity of impairment less than that suggested by Dr. Barber in the Medical Source Statement. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2012) (holding that claimant's favorable response to conservative treatment can be evidence undermining the alleged severity of a claimant's condition.) Such reasons, therefore, are also sufficient to support the ALJ's finding

9

Thus, the Court finds that the ALJ's explanation for rejecting Dr. Barber's conclusions were justified and supported in this regard. *See, e.g.*, *Clay v. Colvin*, No.14-CV-2893-BAS, 2017 WL 1478618, at *12 (S.D. Cal. Apr. 25, 2017) (finding that the ALJ's discounting of a treating physician's opinion was proper where the doctors found leg elevation necessary for claimant with osteoarthritis but two forms completed by the same doctor indicated different limitations); *see also Dias v. Colvin,* No. 14-CV-5271-NJV, 2016 WL 758345, at *3 (N.D. Cal. Feb. 26, 2016) (holding that the record did not have the "objective findings that would justify the more extreme limitations the doctor assessed" in a case where the doctor stated that claimant needed to elevate her legs during the workday).

### 2. Dr. Flanagan's Medical Opinions

The ALJ further found the opinions of consulting examining physician, Dr. Flanagan, more persuasive, and discounted Dr. Barber's opinion on those grounds. The ALJ has discretion in resolving conflicts between medical opinions. *See Tommasetti*, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995) (holding that the "ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining that examining physician's opinion alone can constitute substantial evidence when "consistent with other independent evidence in the record"); *see also Bayliss*, 427 F.3d at 1216 (stating that ALJ can reject a treating physician's assessment of limitations when the physician's clinical notes and other recorded observations regarding the claimant's capabilities contradict the assessment).

Dr. Flanagan noted that claimant's range of motion in her knees and hips were within normal limits, there were no deformities, no evidence of swelling, and no palpable mass or inflammation. (AR 342.) Dr. Flanagan found motor strength was within normal limits and no evidence of muscle atrophy or spasm. (*Id.*) Despite the claimant's crepitus (audible click) with extension in her right knee and some pain upon range of motion, all other testing on her knees was

---

that Dr. Barber's opinions regarding claimant's physical limitations are not entirely credible.

negative. (*Id.*) Dr. Flanagan concluded that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours in an 8-hour workday; and was limited to occasional postural activities. (AR 343.)

Dr. Flanagan found a less restrictive RFC than Dr. Barber. The ALJ arrived at a middle point between the two opinions, with an RFC less restrictive than Dr. Barber's, but more restrictive than Dr. Flanagan's. In so doing, the ALJ properly exercised his discretion in resolving inconsistencies between Dr. Flanagan's and Dr. Barber's opinion in determining claimant's RFC. 20 C.F.R. § 416.927(e)(2); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity").

For these reasons, the Court finds that the ALJ properly dismissed Dr. Barber's opinion that the claimant needs to elevate her legs above the heart for two hours in an eight-hour workday. Accordingly, the Court **GRANTS** the Commissioner's motion and **DENIES** claimant's motion in this regard.

**B.     DISCOUNTING DR. BARBER'S OPINION THAT CLAIMANT MUST USE A CANE**

Claimant also argues that the ALJ did not give legally sufficient reasons for rejecting Dr. Barber's opinion that claimant needs to use a cane. With regard to claimant's need for a cane, the ALJ states that "[p]hysical therapy notes support the records from Dr. Barber indicating improvement following surgery, and do not support the claimant's need for a cane to ambulate." (AR 17.) For the same reasons stated above, the ALJ properly discounted Dr. Barber's opinions regarding claimant's need for a cane.

Additionally, Dr. Flanagan specifically addressed claimant's need for a cane: "The claimant also holds on to the furniture in the room while ambulating. Although a single-point cane was present in the room, she did not utilize it during formal gait analysis." (AR 341.) Dr. Flanagan further noted that the "use of an assistive device is not medically necessary." (AR 343.) For the reasons stated above regarding inconsistencies in Dr. Barber's assessments, the ALJ properly described his reasons for finding Dr. Flanagan's opinions to be more credible, and thus assigning them greater weight. (AR 18); *see Andrews*, 53 F.3d at 1039–40; *see also Tonapetyan*,

242 F.3d at 1149; *Bayliss*, 427 F.3d at 1216. Thus, the ALJ properly dismissed Dr. Barber's conclusion that the claimant needs a cane to ambulate.

Accordingly, the ALJ's decision is supported on this issue as well.

V.     **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Commissioner's motion and **DENIES** claimant's motion for summary judgment. No later than seven (7) days from the date of this Order, the parties must file a proposed form of judgment, approved as to form by claimant.

This Order terminates Docket Numbers 18 and 21.

**IT IS SO ORDERED.**

**Date:** August 7, 2017   _____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE